1

2

3

4                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
5                                    AT SEATTLE

6    PACIFIC COUNTY TEA PARTY, et al.,

7                          Plaintiff,            CASE NO. 2:20-cv-00971-RAJ-BAT

8          v.                                    **REPORT AND
                                                 RECOMMENDATION**
9    JAY INSLEE, et al.,

10                         Defendants.

11         Defendants Attorney General Bob Ferguson and Governor Jay Inslee move to dismiss

12   Plaintiff's Amended Complaint (Dkt. 15) with prejudice pursuant to Fed. R. Civ. P. 12(b)(1), (4),

13   (5), and (6). Dkt. 11. For the reasons stated herein, it is recommended that the motion be granted.

14                                   **BACKGROUND**

15   A.    Procedural Background

16         The Pacific County Tea Party (Tea Party), along with four of its members, filed a

17   "Federal RICO Criminal Complaint" against Governor Jay Inslee, Mayor "Jenney [sic] Durkin,"

18   Attorney General Robert Ferguson (the Attorney General), University of Washington Law

19   Professors, "Chaz Leaders 1–1000," and "Jane and John Does et all [sic]." Dkt. 1. The complaint

20   included several grievances, including the Defendants' alleged attempts "to overthrow our

21   constitutional form of government and force their communist form of government onto the

22   people, by replacing our Constitutional Law with Sharia Law." *Id.* at 3. The complaint also

23

REPORT AND RECOMMENDATION - 1

1    raised concerns about the "judicial fraud industry," election interference, and a "criminal

2    conspiracy of domestic terrorist known as Chaz." *Id.* at 5.

3           The Tea Party filed its complaint on June 16, 2020 and filed proposed summonses the

4    following week. Dkt. 6. The day after the summonses were filed, the Court notified the Tea Party

5    that its complaint failed to comply with LCR 3(a), LCR 4, and FRCP 4. Dkt. 2. The Court sent a

6    similar notice to the Tea Party on June 25, 2020. Dkt. 7. More than a month later, the Court

7    directed the Tea Party to file a status report regarding the correct summons forms. Dkt. 9. In

8    November 2020, the Tea Party submitted a status report requesting leave to amend its complaint.

9    Dkt. 12. Leave to amend was granted. Dkt. 14. The Tea Party filed an Amended Complaint on

10   December 9, 2020. Dkt. 5. At that time, the four individuals were terminated from the docket and

11   the Tea Party was listed as the sole plaintiff.

12          The Court again advised the Tea Party that the proposed summonses failed to comply

13   with the federal rules. Dkt. 17. In addition, the Attorney General was not served until March 19,

14   2021, exactly 100 days after the Amended Complaint was filed. Dkt. 23, Declaration of Paul M.

15   Crisalli, Ex. 4. Governor Inslee was served a few days later, on March 23, 2021. The service was

16   also incomplete as the defendants only received a summons, an unsigned complaint, and an

17   unsigned set of interrogatories and requests for production. Dkt. 23, Crisalli Decl., Ex. 1. On

18   March 25, 2021, the Tea Party filed proof of service of Governor Inslee, Secretary of State Kim

19   "Whyman [sic]", Mayor Durkin, and "UW Law Professors." Dkt. No. 20. However, the Tea

20   Party's attempt to serve these parties personally was unsuccessful; the parties instructed the Tea

21   Party that they would accept service through U.S. Mail. Dkt. No. 20. To date, there is no

22   indication that the Tea Party has served any of the defendants properly.

23

Counsel for the Attorney General (who appears on behalf of Governor Inslee and Attorney General Ferguson), contacted James O'Hagan, whose unsigned signature block marks the end of the Amended Complaint, to confer about the Tea Party's claims. Dkt. 23, Chrisalli Decl., Ex. 1. Mr. O'Hagan is not a party to this lawsuit, but he purports to represent the Tea Party. Mr. O'Hagan is not an attorney.

The Assistant Attorney General's March 31, 2021 letter notified Mr. O'Hagan that, under Supreme Court case law and the local civil rules, legal entities may not be represented pro se. Dkt. 23, Crisalli Decl., Ex. 1 (citing *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–03 (1993) and LCR 83.2(b)(3)). The letter also pointed out that the Amended Complaint is not signed and that interrogatories and requests for production are not proper at this stage of litigation under FRCP 26(d). Dkt. 23, Crisalli Decl., Ex. 1. Due to these procedural deficiencies and substantive defects with the substance of the Tea Party's claims, counsel asked Mr. O'Hagan to reconsider this litigation. *Id.*, Crisalli Decl., Ex. 1.

On April 5, 2021, Mr. O'Hagan responded to the email, and copied over 50 other email addresses on his response. The email accused counsel of being a "proud member of the judicial fraud industry" and "nothing more than a common criminal fraudster." Dkt. 23, Crisalli Decl., Ex. 2. Mr. O'Hagan disagreed with counsel's position that legal entities must be represented by an attorney. *Id.* Mr. O'Hagan also attached a signed copy of the final page of the Tea Party's Amended Complaint. *Id.*, Ex. 3.

B.     The Amended Complaint

The Tea Party's Amended Complaint purports to allege a conspiracy between the Governor, the Secretary of State, the Attorney General, the Seattle City Council, University of Washington Law Professors, and members of the Capital Hill Occupied Protest ("CHOP"). The

gravamen of this alleged conspiracy is that these "Deep State Defendants" colluded to interfere in the 2020 election and deprive Washingtonians of their "lives, liberties, and property" through the "judicial fraud industry." Dkt. 15, ¶ 2. At least sixteen causes of action are asserted.

Aside from general reference to the "Deep State Defendants," the Attorney General is mentioned once. Dkt. 15, at ¶ 7. The Tea Party claims the Attorney General and the other defendants "ignored their duty to protect the people in and around" CHOP and "used the situation to intimidate voters . . . like the Nazi Gestapo Party of Germany." Dkt. 15, at ¶ 7. The Amended Complaint further exclaims that the defendants promised "social benefits to bribe voters," seized "most of our personal and real properties in the name of taxes," and permitted candidates for public office to "threaten voters." Dkt. 15, ¶¶ 8–10.

Few of the allegations, if any, claim injury to the Tea Party and its members. Briefly, the Amended Complaint describes "schemes to deprive us of the right to enjoy the possession of our tangible property" for the Defendants' pecuniary gain. Dkt. 15, ¶ 14. The Tea Party also submits that the Defendants "assaulted [O'Hagan] and [his] political supporters" in order to "silence [their] political efforts." Dkt. 15, ¶ 15. Finally, the Tea Party claims that Defendants' alleged conduct denied the Tea Party "political power and free elections." Dkt. 15, at ¶ 16.

The Tea Party seeks an injunction of the "certification and entry of the [Electoral College] vote" and order "all Washington Case 2:20-cv-00971-State Representatives to conduct a reoccurrence to our fundamental principles." Dkt. 15, at 8. The Tea Party also seeks a permanent injunction requiring the Defendants to cease the "illegal actions" described in the Amended Complaint and appears to request that the Court impose "term limits for all public officers and employees." Dkt. 15, at 8. Additionally, the Tea Party seeks "monetary damages . . .

1  to discourage these types of Deep State Individuals from organizing and engaging in these kinds
2  of attacks on our constitutional form of government." Dkt. 15, at 8.

3  **DISCUSSION**

4  A.    Legal Standards

5        Fed. R. Civ. P. 12(b)(4) permits "dismissal based on insufficient process . . . to allow
6  challenges to irregularities in the contents of a summons." *Shields v. Boeing Co.*, No. C11-926Z,
7  2011 WL 2680506, at *1 (W.D. Wash. July 8, 2011). Relatedly, Fed. R. Civ. P. 12(b)(5) permits
8  "dismissal based on insufficient service of process" to allow a defendant "to challenge the
9  method of service attempted by the plaintiff." *Id.* District courts must "extend the time for
10 service for an appropriate period" when a plaintiff shows good cause for its failure to comply
11 with the rules and may exercise discretion to extend time for service even without a showing of
12 good cause. *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).

13       Fed. R. Civ. P. 12(b)(1) requires a court to dismiss a complaint that fails to allege facts
14 establishing subject matter jurisdiction. *See Savage v. Glendale Union High Sch., Dist. No. 205,*
15 *Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Without standing, the court lacks
16 Article III jurisdiction and the case must be dismissed. *Cetacean Cmty. v. Bush*, 386 F.3d 1169,
17 1174 (9th Cir. 2004). Article III also "deprives federal courts of jurisdiction to hear moot cases."
18 *NAACP, Western Region v. City of Richmond*, 743 F.2d 1346, 1352 (9th Cir. 1984). The plaintiff
19 bears the burden to establish the court's jurisdiction. *Chandler v. State Farm Mut. Auto Ins. Co.*,
20 598 F.3d 1115, 1122 (9th Cir. 2010).

21       Under Fed. R. Civ. P. 12(b)(6), courts must dismiss complaints if "there is a lack of a
22 cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal
23 theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citations omitted).

1    A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief

2    that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is

3    facially plausible if it contains factual content that allows the court to draw reasonable inference

4    that the defendant may be liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must

5    accept as true all material allegations in the complaint, as well as reasonable inferences drawn

6    from them, and the complaint must be read in the light most favorable to the nonmoving party.

7    *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Nonetheless, the court

8    must not accept allegations that are "merely conclusory, unwarranted deductions of fact, or

9    unreasonable inferences." *Id*. The court "disregard[s] '[t]hreadbare recitals of the elements of a

10   cause of action, supported by mere conclusory statements.'" *Telesaurus VPC, LLC v. Power*, 623

11   F.3d 998, 1003 (9th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

12   B.      Failure to Comply with Federal Rules

13          1.      Unrepresented Party

14          Fed. R. Civ. P. 11(a) requires that each pleading "be signed by at least one attorney of

15   record . . . or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). In the

16   past, Mr. O'Hagan has represented himself pro se. *See*, *e.g.*, *O'Hagan v. Washington*, No. C19-

17   6205RBL, 2019 WL 7037395 (W.D. Wash. Dec. 20, 2019); *Washington v. O'Hagan*, No. MC

18   16-5038 BHS, 2017 WL 218803 (W.D. Wash. Jan. 19, 2017); *O'Hagan v. NW. Farm Credit

19   Servs*., 158 Wn. App. 1040, 2010 WL 4631151 (Wash. Ct. App. 2010). In those cases, however,

20   Mr. O'Hagan was a party to the litigation. Here, the Tea Party is the sole plaintiff. *See* Dkt. 15.

21          Legal entities like the Tea Party may not be represented pro se. *Rowland*, 506 U.S. at

22   201–03; LCR 83.2(b)(3). Mr. O'Hagan is not a licensed attorney and may not serve as counsel

23   for the Tea Party in this matter. Although Mr. O'Hagan protests that this requirement is "absurd"

1   and that its members were "kidnapped and turned into political prisoners", the Tea Party's suit

2   cannot proceed without counsel. For this reason, it is recommended that the Court dismiss the

3   Amended Complaint.

4          2.      Failure to Comply with Rule 4(m)

5          Plaintiffs must serve defendants "within 90 days after the complaint is filed." Fed. R. Civ.

6   P. 4(m). When a plaintiff fails to do so, the court "must dismiss the action without prejudice . . .

7   or order that service be made within a specified time." *Id*. Sanctions, including involuntary

8   dismissal of a plaintiff's case under Fed. R. Civ. P. 41(b), may be appropriate when a plaintiff

9   "fails to prosecute his or her case or fails to comply with the court's order." *Bowler v. Ferguson*

10  *Enterprises, Inc*., No. C11-6034 RJB, 2012 WL 6738697, at *5 (W.D. Wash. Dec. 31, 2012)

11  (collecting cases).

12         Here, the Tea Party has not shown good cause for its failure to prosecute this case. The

13  original complaint was filed nine months ago, and the Court—on multiple occasions—notified

14  the Tea Party of its failure to comply with the federal and local court rules. In August 2020, the

15  Court advised the Tea Party of the requirements and consequences of Rule 4(m). Dkt. 9.

16  Notwithstanding this advice, the Tea Party did not serve the Attorney General until 100 days

17  after the Amended Complaint was filed. Governor Inslee was served several days after that and,

18  to date, the Tea Party has provided no proof of service as to the remaining defendants.

19         The Tea Party has been given ample time and opportunity to perfect service but has

20  repeatedly fail to do so, despite being advised by the Court on several occasions. Moreover,

21  ignorance of the federal rules does not "constitute[] good cause for untimely service." *Townsel v.*

22  *Contra Costa Cnty*., 820 F.2d 319, 320 (9th Cir. 1987). The Tea Party's insistence in attempting

23  to proceed unrepresented also does not justify its noncompliance with Rule 4(m).

1   Although pro se pleadings are held to a "less stringent standard," pro se litigants must

2   still "follow the same rules of procedure that govern other litigants." *Copeland v. City of Camas*,

3   No. C19-5935-BHS-MLP, 2019 WL 7811332 (W.D. Wash. Dec. 6, 2019), report and

4   recommendation adopted, No. C19-5935 BHS, 2020 WL 488644 (W.D. Wash. Jan. 30, 2020))

5   (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Briones v. Riviera Hotel & Casino*, 116 F.3d

6   379, 381 (9th Cir. 1997)). However, because a legal entity such as the Tea Party may not proceed

7   without counsel, this lenient standard does not apply. Even if the Court were to apply this

8   standard, the Tea Party's recurring failure to effect timely service of process fails to meet this

9   more lenient standard.

10   Ordinarily, "[t]echnical defects in summons do not justify dismissal" unless the defendant

11   demonstrates actual prejudice. *Chan v. Soc'y Expeditions, Inc*., 39 F.3d 1398, 1404 (9th Cir.

12   1994). However, persistent and blatant noncompliance with the FRCP can go beyond a mere

13   "technical defect" and become "failure to serve altogether." *Pokemon Co. Int'l, Inc. v. Shopify,*

14   *Inc.*, No. 16-MC-80272-KAW, 2017 WL 697520, at *7 (N.D. Cal. Feb. 22, 2017) (distinguishing

15   *Chan* for a Rule 45 subpoena that "was possibly never served"); *see also Bowler*, 2012 WL

16   6738697, at *5 (quashing pro se litigant's defective service of process).

17   The Tea Party's repeated procedural flaws go beyond mere technicalities. The Tea Party

18   has not been successful in even initiating this lawsuit against the named defendants, and even as

19   to the three defendants who it served, that service is defective. Although the Tea Party was

20   afforded additional time to accomplish service, it has still failed to do so. The Tea Party served

21   an unsigned amended complaint after the expiration of the 90-day window, despite having been

22   advised by this Court of Rule 4(m). And as previously noted, the Tea Party is unrepresented by

23

REPORT AND RECOMMENDATION - 8

counsel and the Amended Complaint remains unsigned by counsel authorized to appear before this Court.

Because these errors transcend mere technicalities, the undersigned recommends that the Court decline to exercise its discretion to further extend the time for service and that the Amended Complaint be dismissed.

C.    Subject Matter Jurisdiction

Defendants contend that even if the Tea Party cured the foregoing defects, the Amended Complaint should be dismissed because this Court lacks subject matter jurisdiction.

1.    Injury In Fact

To satisfy Article III's standing requirement, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The plaintiff "bears the burden of establishing these elements" and "must 'clearly . . . allege facts demonstrating' each element." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). To satisfy the first element of standing, the injury in fact must be "concrete and particularized." *Id*. at 1548. A concrete injury is "'real,' and not 'abstract,'" and a particularized injury must "affect the plaintiff in a personal and individual way." *Id*.

A liberal reading of the Amended Complaint suggests only generalized injury to the public. The Tea Party alleges that the Defendants "protect[ed] and promot[ed] the Judicial Fraud Industry," thus "victimiz[ing] all economically vulnerable individuals." Dkt. 15, ¶ 3. The Tea Party also alleges that the Defendants "have taken most of our personal and real properties in the name of taxes, levies, fees and fines without just compensation." Dkt. 15, ¶ 9. However, the Tea Party makes no showing of how these injuries are personal to the organization or its members. A

1   plaintiff "cannot escape the consequences of [this] failure by characterizing these injuries as

2   injuries to the public in general." *Biers v. Wash. State Liquor & Cannabis Bd.*, No. C15-

3   1518JLR, 2016 WL 3079025, at *4 (W.D. Wash. June 1, 2016). Private plaintiffs have "no

4   standing to sue for generalized grievances." *Id.*; *see also Steel Co. v. Citizens for a Better Env't*,

5   523 U.S. 83, 106 (1998) (holding plaintiff seeking "vindication of the rule of law" lacks

6   standing).

7        The only recognizable allegation of a particularized injury in the Amended Complaint

8   declares that the Defendants "assaulted [O'Hagan] and [his] political supporters" to intimidate

9   them and silence their political efforts. Dkt. 15, at ¶ 15. However, the Tea Party alleges no facts

10  to support this declaration. *See Spokeo*, 136 S. Ct. at 1547 (requiring clear factual allegations to

11  demonstrate the elements of standing).

12       2.   <u>Mootness</u>

13       Article III courts lack jurisdiction to hear moot cases. *NAACP, Western Region v. City of*

14  *Richmond*, 743 F.2d 1346, 1352 (9th Cir. 1984). A moot case has "lost its character as a present,

15  live controversy of the kind that must exist if we are to avoid advisory opinions." *Oregon v.*

16  *F.E.R.C.*, 636 F.3d 1203, 1206 (9th Cir. 2011) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969)

17  (per curiam)). This question has already been resolved by courts in the context of alleged

18  irregularities and fraud in the 2020 presidential election. *See*, *e.g.*, *Wood v. Raffensperger*, 981

19  F.3d 1307 (11th Cir. 2020), *cert. denied*, No. 20-799, 2021 WL 666431 (U.S. Feb. 22, 2021);

20  *King v. Whitmer*, No. CV 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020), *appeal*

21  *dismissed*, No. 20-2205, 2021 WL 688804 (6th Cir. Jan. 26, 2021).

22       The Tea Party asks this Court to provide the same relief. Regardless of the underlying

23  merits of the Tea Party's claims, this Court cannot "turn back the clock and create a world in

REPORT AND RECOMMENDATION - 10

1  which the 2020 election results are not certified." *Raffensperger*, 981 F.3d at 1317 (internal

2  quotations omitted). As the Eastern District of Michigan pointed out: "This ship has sailed."

3  *Whitmer*, 2020 WL 7134198, at *5.

4     Because the Tea Party has not meaningfully demonstrated any injury to invoke this

5  Court's jurisdiction and its generalized claims of election fraud are moot, it is recommended that

6  the Amended Complaint may be dismissed for want of subject matter jurisdiction.

7  D.  <u>Failure to State a Claim</u>

8     Courts do not accept allegations that are "merely conclusory, unwarranted deductions of

9  fact, or unreasonable inferences." *Daniels-Hall*, 629 F.3d at 998. The Amended Complaint

10 includes a multitude of unsupported legal conclusions and political grievances but fails to set

11 forth any legally cognizable claim. In fact, each of the sixteen claims lacks alleged facts to

12 permit this Court to draw reasonable inferences about liability. Courts "disregard '[t]hreadbare

13 recitals of the elements of a cause of action, supported by mere conclusory statements.'"

14 *Telesaurus*, 623 F.3d at 1003.

15    For example, the Tea Party alleges negligence, but does not identify any underlying

16 conduct constituting a breach of duty. Dkt. No. 15, at ¶ 13; *see Ranger Ins. Co. v. Pierce Cnty.*,

17 164 Wn.2d 545, 552, 192 P.3d 886 (2008) (discussing the elements of negligence). The Tea

18 Party also alleges assault but does not identify the action taken by the Defendants to cause the

19 Tea Party to apprehend imminent harmful contact. Dkt. No. 15, at ¶ 15; *see Brower v. Ackerley*,

20 88 Wn. App. 87, 93, 943 P.2d 1141 (1997) (discussing the elements of assault). The Tea Party

21 also alleges fraud but does not identify a misrepresentation made by the Defendants. Dkt. No. 15,

22 at ¶ 3; *see Adams v. King Cnty.*, 164 Wn.2d 640, 662, 192 P.3d 891 2008) (discussing the

23 elements of fraud). The Tea Party also alleges breach of contract but does not identify a breach

REPORT AND RECOMMENDATION - 11

1   of a contractual duty owed by the Defendants. Dkt. No. 15, at ¶ 6; *see Univ. of Wash. v. Gov't*

2   *Emps. Ins. Co., 200*, 200 Wn. App. 455, 467, 404 P.3d 559 (2017) (discussing the elements of

3   breach of contract).

4           Even the most liberal reading of the Amended Complaint reveals a complete lack of

5   predicate facts to substantiate any claim of liability. The Tea Party proffers vague accusations of

6   a "Deep State" conspiracy but fails to substantiate its allegations with factual support. For

7   example, the Amended Complaint alleges that the "Deep State Defendants . . . are involved in

8   maintaining protecting and promoting the Judicial Fraud Industry [that] sells injustices to the

9   highest bidders" (Dkt. 15, ¶ 3), but there are no facts describing what "injustices" the Defendants

10  allegedly sold, when the bargain occurred, and who transacted with the Defendants. The

11  accusation does not allege "enough facts to state a claim to relief that is plausible on its face."

12  *Zeiny v. United States*, No. 17-CV-07023-HRL, 2018 WL 1367389 (N.D. Cal. Mar. 16, 2018)

13  (*Zeiny III*) (dismissing as "purely speculative accusations" a "non-exhaustive list of twenty three

14  acts of sabotage and harassment committed by the CIA against Zeiny" and lacking "the factual

15  support needed to survive a motion under Rule 12(b)(6)). *Id.*, *1, *3.

16          The Tea Party's response to the Defendants' Motion to Dismiss is devoid of factual

17  allegation and contains only additional legal conclusions. *See*, *e.g.*, Dkt. 24, at 9 ("The fact is the

18  defendants have not denied the fact they violated RCW 42.17A.550 when AG Ferguson filed his

19  lawsuit against President Trump and when Governor Inslee promised increasing social

20  benefits."). But courts "will not assume the truth of legal conclusions." *Zeiny III*, 2018 WL

21  1367389, at *3 (citing *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990,

22  996 (9th Cir. 2014)).

23

1    The response also raises what appear to be new factual allegations, but these additions do

2    nothing to remedy the lack of adequate factual allegations in the Amended Complaint. *See, e.g.*,

3    Dkt. 24, at 9 ("The fact is the defendants have not denied the fact the defendants are communist

4    dictators that are addicted to power and riches, who utilized Nazi Gestapo tactics to satisfy their

5    uncontrollable thirst for power."). These new allegations fail to offer the level of detail necessary

6    for this Court to infer a basis for relief.

7         Accordingly, the Court recommends that the Amended Complaint may be dismissed as

8    the Tea Party's allegations, even when construed in their most favorable light, do not offer

9    adequate factual substance to state a basis for relief. The Court also finds further amendment

10   would be futile. The Tea Party has already amended its complaint once but both iterations fail to

11   muster any support for sweeping claims of a vast conspiracy between the "Deep State

12   Defendants," and the Tea Party has made no effort to provide any factual allegations in its

13   response to the motion to dismiss. Thus, the Court recommends that the Amended Complaint be

14   dismissed with prejudice. *See Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

15   E.    The Attorney General is Absolutely Immune from the Tea Party's Claims

16        The Attorney General has absolute immunity from suit for actions allegedly taken in his

17   prosecutorial, or "quasi-judicial," official capacity. "Quasi-judicial immunity 'attaches to persons

18   or entities who perform functions that are so comparable to those performed by judges that it is

19   felt they should share the judge's absolute immunity while carrying [o]ut those functions.'"

20   *Kelley v. Pierce Cnty.*, 179 Wn. App. 566, 574, 319 P.3d 74 (2014) (quoting *Lutheran Day Care*

21   *v. Snohomish Cnty.*, 119 Wn.2d 91, 99, 829 P.2d 746 (1992)). Attorneys general and other

22   criminal and civil prosecutors are classic examples of persons entitled to quasi-judicial immunity

23   for alleged acts taken in their official capacities. A prosecutor, "acting as he does in a quasi-

judicial capacity, is, as a matter of public policy, immune from liability for acts done in his

official capacity." *Creelman v. Svenning*, 67 Wn.2d 882, 884, 410 P.2d 606 (1966). The policy

reason for absolute quasi-judicial immunity is not to protect attorneys general or other

prosecutors as individuals, but [to] protect[] . . . the public and the ensure active and independent

action of the officers" of the court." *Id*. (quoting *Anderson v. Manley*, 181 Wash. 327, 331, 43

P.2d 39 (Wash. 1935)).

Absolute quasi-judicial immunity extends to all "'duties of the prosecutor in his role as

advocate for the State,'" including "acts undertaken by a prosecutor in preparing for the initiation

of judicial proceedings for trial, and which occur in the course of his role as an advocate for the

State," such as deciding whether to initiate a prosecution and preparing to present evidence to a

grand jury. *Buckley v. Fitzsimmons*, 509 U.S. 259, 272–73 (1993) (quoting *Imbler v. Pachtman*,

424 U.S. 409, 431 n.33 (1976)); *see, e.g.*, *McCarthy v. Cnty. of Clark*, 193 Wn. App. 314, 338–

39, 376 P.3d 1127 (2016) (prosecutor had absolute immunity for alleged actions "related to her

duty to make charging decisions"); *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (district

attorney had absolute prosecutorial immunity for acts that "necessarily require legal knowledge

and the exercise of related discretion" in his official role).

The substance of the Tea Party's claims appears to relate to actions taken in the Attorney

General's official capacity. The only allegation that specifically mentions the Attorney General

submits that he "ignored [his] duty to protect the people in and around the Chaz Zone [sic]." Dkt.

15, ¶ 7. As this allegation pertains to charging decisions and participation in grand jury

proceedings, it falls squarely within the Attorney General's official prosecutorial capacity.

Because quasi-judicial immunity precludes this very type of case, it is recommended that the Tea

Party's claims against the Attorney General may be dismissed on this basis also.

REPORT AND RECOMMENDATION - 14

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **May 28, 2021**. The Clerk should note the matter for **May 31, 2021**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed seven (7) pages. The failure to timely object may affect the right to appeal.

DATED this 10th day of May, 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15